NELLIE PHILLIPS, Appellant, v. WILLIAM F. SMITH et al., Appellees.

No. 47458.

(Reported in 38 N. W. 2d 87)

864

June 14, 1949.

Frank W. Oertel and J. F. Hudson, both of Keokuk, for appellant.

Johnson, Martin, Johnson & Phelan, of Fort Madison, for Lillian S. Perks, appellee.

Hollingsworth & Hollingsworth, of Keokuk, for William F. Smith and Minerva Smith, appellees.

OLIVER, J.—Bluff Park is a tract of land situated in and adjacent to the town of Montrose, Lee County, Iowa. It overlooks the Mississippi River and had been a summer resort for many years. In 1911 it was platted by J. E. Whitaker, as an addition or subdivision. The plat shows one hundred sixty-eight lots, various drives or streets, several small parks, a children's playground, ball park and athletic field, music hall and dance pavilion, tennis court, pavilion, artesian well and hotel.

Subsequently the six lots here in question were conveyed to different grantees by deeds Exhibits A to E. Whitaker's deed conveying one lot (Exhibit A) provided it should be used for residence purposes only, and also:

"The buyers agree and such agreement is made a covenant running with the land, that he will annually, on or before the 1st day of July in each year, pay to the grantor or his assigns, as the owner of Bluff Park resort, the sum of Six Dollars for supervision and maintenance of grounds, and such annual payments shall be enforceable as a lien against said lot if not paid within 30 days after maturity of the same."

A deed to two lots (Exhibit C) contained the same provisions except the annual payments were $6 per cottage instead of $6 per lot. Another deed (Exhibit B) stated also: "It is agreed if this Bluff Park is not maintained as a summer resort the Six Dollar annual payment shall cease * * *."

The deed to another lot (Exhibit D) contained none of the foregoing provisions. Plaintiff pleaded they were omitted through error or oversight and that it was generally understood that all lots would be subjected to the $6 annual charge for the benefit of the owners thereof and the purchasers of other lots.

A quitclaim deed to two lots (Exhibit E), which contained the same provisions as Exhibit A, was made by plaintiff and her husband in 1935.

In 1916 Whitaker conveyed to Walter Phillips the unsold parts of Bluff Park. Phillips operated Bluff Park until about 1930. In 1931 a mortgage made by Phillips was foreclosed and title to the property passed to a bank. In 1935 plaintiff, Nellie Phillips, wife of Walter, received a quitclaim deed to the unsold parts of Bluff Park. Since then Walter Phillips has been in active charge of Bluff Park for her.

In 1943 defendants became the owners of the six lots described in Exhibits A to E through mesne conveyances from the grantees in said deeds. This action is to establish a lien on each of these six lots in the amount of $6 per year for such lot or cottage, for supervision and maintenance of grounds for eight years beginning July 1941.

866

I. The principal question is whether plaintiff supervised and maintained the Bluff Park grounds as a resort during this period. The trial court found the record did not show she had done this and rendered judgment for defendants.

We agree with the finding of the trial court. There was considerable evidence plaintiff failed to keep up the park and roadways leading to cottages and permitted them to fall into a state of neglect and disrepair. The roads into the park, which formerly were kept up by the operator of the park, have been maintained by the county for some years. Apparently the park was treated as an adjunct to Mr. Phillips' farming operations.

A defendant testified that since 1943, when he began to occupy a summer cottage, he observed Phillips' livestock loose in Bluff Park. Each summer he repeatedly drove Phillips' horses and mules out of his yard and saw others do the same thing. He complained to Phillips "but he turned around and walked off * * * he just turned them loose in there. And in the winter time they pastured the park," and trampled the yards. "The yards were almost ruined in the spring; it was awful hard to fix them up and the hogs rooted it up the first summer I was there * * * three yards were rooted up by the hogs." Another witness testified Phillips' horses had damaged his yard every winter for the past ten years and the pigs rooted up the yard twice. This witness saw wires which the owners of two cottages had placed around them to protect the premises from the livestock. A mule belonging to Phillips broke through the roof of a cave owned by one of the defendants.

The water from the artesian well, now operated with a pump, has become rusty and filled with sediment. A stock watering tank sits beside the well and is used by Phillips' livestock.

The croquet grounds have not been kept up. The swings have been removed. The tennis court is now part of a pasture. The baseball diamond has been abandoned and is now a cornfield. The grass in the park has been permitted to grow tall and Phillips cut and used it for hay. The hotel or dining hall has been discontinued. According to Mr. Phillips, "It isn't there any longer."

Although Mr. Phillips testified at length about maintenance work, much of his testimony was indefinite and part of it apparently referred to work done around rental cottages and premises owned by the Phillipses. He admitted he had placed wire around the front porch of his cottage to protect it from his horses which were running loose in the resort. He admitted also that little work had been done on Bluff Park for several years. He testified, "I don't have any agreement with any of these people up there as to just what I am supposed to do each year. I just do what I want to. They can't tell me what to do. They don't."

II. For simplification it will be assumed the provisions of Exhibit A are applicable to each of the six lots. We think the provision that the lot owner will pay the resort owner $6 per year for supervision and maintenance of grounds was, as stated therein, a covenant running with the land. Sexauer v. Wilson, 136 Iowa 357, 113 N. W. 941, 14 L. R. A., N. S., 185, 15 Ann. Cas. 54; Neponsit Property Owners Assn., Inc. v. Emigrant Industrial Sav. Bk., 278 N. Y. 248, 15 N. E. 2d 793, 118 A. L. R. 973; 165 Broadway Bldg., Inc. v. City Investing Co., 2 Cir., N. Y., 120 F. 2d 813; Nassau County v. Kensington Assn., 21 N. Y. Supp. 2d 208, 215; 21 C. J. S., Covenants, section 73, page 932. The question whether covenants are dependent or independent is largely a matter of intention. Stephenson v. Neppel, 192 Iowa 246, 249, 182 N. W. 369. In this case the agreement was to "pay * * * for supervision and maintenance of grounds." This language requires the conclusion that the covenant to pay was dependent upon the covenant to maintain, etc. It is clear plaintiff was not entitled to a lien upon the lots for a service not rendered.

III. The record on appeal does not comply with Rule 340, Rules of Civil Procedure. It sets out most of the testimony in question-and-answer form. It also sets out at length various objections and colloquies between counsel and the court, which should have been omitted or abstracted.—Affirmed.

All JUSTICES concur except MANTZ, J., not sitting.