The **EQUITABLE TRUST COMPANY, a corporation of the State of Maryland, Plaintiff,**

v.

James M. **O'NEILL** and Patricia H. O'Neill, his wife, Cotton Patch Hills Association, a corporation of the State of Delaware, and Sussex County Receiver of Taxes, Defendants.

Superior Court of Delaware,
Sussex County.

Submitted June 10, 1980.
Decided June 30, 1980.

**1198**

John A. Sergovic, Jr., of Tunnell & Raysor, Georgetown, for plaintiff.

Houston Wilson, of Wilson, Halbrook, Bayard, Bunting & Marshall, Georgetown, for defendants.

OPINION

TEASE, Judge.

Defendants James M. and Patricia H. O'Neill, record owners of lot 48, First Addition to Cotton Patch Hills, Sussex County, Delaware, defaulted on a mortgage made to plaintiff–mortgagee Equitable Trust Company. Plaintiff filed its Complaint of Scire Facias Sur Mortgage and praecipe on October 9, 1979. Defendants, residents of Washington, D.C., were served pursuant to the Delaware long arm statute, 10 *Del.C.* § 31104, first by serving the Secretary of State, then by sending a copy of the Complaint to the defendants' out of state address by registered mail. Because plaintiff believed Cotton Patch Hills Association (a corporation of the State of Delaware authorized to supervise and manage Cotton Patch Hills) to have a substantial property interest in the mortgaged premises under several recent Delaware Supreme Court decisions, thus requiring their notification of foreclosure proceedings, that Association (CPHA) was made a party defendant and served by the Secretary of State under an alias summons. An answer was filed by CPHA, but no answer or affidavit of defense was forthcoming from the mortgagors.

The sale, originally scheduled for April 25, 1980, was stayed by order of this Court on April 22, 1980. Defendant CPHA seeks to have the writ of levari facias quashed, vacated, or set aside due to alleged errors in the form of the complaint, judgment, and writ, and on the basis of lack of jurisdiction. Further CPHA urges that if a sale of the premises takes place, Restrictive Covenant # 24, which grants to CPHA a thirty–day option to purchase in the case of a proposed sale by the owner, be enforced. Plaintiff seeks to amend both the complaint and the entry of judgment so as to correct possible errors in form and to proceed with the sale. Plaintiff also urges that Restrictive Covenant # 24 not be enforced against prospective purchasers at such sale.

CPHA, at page 21 of its memorandum, challenges the jurisdiction of the Delaware Court to entertain this matter:

. . . the Defendants–Mortgagors, who are nonresidents of Delaware, have never been served personally with any process issuing out of this Court. The service of process thereon was "substituted service" under the Delaware long arm statute. The Delaware long arm statute, 10 *Del.C.* § 3104(b) (1978 Supp.), however, is to the contrary:

The following acts constitute legal presence within the state. Any person who commits any of the acts hereinafter enumerated thereby submits himself to the jurisdiction of the Delaware courts and is deemed thereby to have appointed and constituted the Secretary of State of this State his agent for the acceptance of legal process in any civil action against such nonresident person arising from the following enumerated acts. The acceptance shall be an acknowledgement of the agreement of such nonresident that any process when so served shall have the same legal force and validity as if served upon such nonresident *personally within the State*, and that such appointment of the Secretary of State shall be irrevocable and binding upon his personal representative. [Emphasis added].

■ Section 3104(c) states, in pertinent part:

. . . a court may exercise jurisdiction over any nonresident, or his *personal* representative, who in person or through an agent . . . (5) Has an interest in, uses or possesses real property in the State . . . [Emphasis added].

Thus, although service under the Delaware long arm statute may technically be characterized as "substituted," it clearly operates as "personal" service upon a nonresident defendant, empowering the Delaware court to act *in personam*.

■ Generally, all assertions of state court jurisdiction, whether they be denominated in rem, or *in personam*, must be evaluated according to the standards set forth in *International Shoe*[1] and its progeny, *Shaffer v. Heitner*, 433 U.S. 186, 193, 97

S.Ct. 2569, 2573, 53 L.Ed.2d 683 (1977); *Jonnet v. Dollar Savings Bank*, 3rd Cir., 530 F.2d 1123 (1976)–that there be sufficient connection with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." 326 U.S. at 316, 66 S.Ct. at 158. And whether an action is labeled *in rem* or *in personam*, it is clear that property cannot be subjected to a court's jurisdiction unless reasonable and appropriate efforts have been made to give the property owners actual notice of the action. *Shaffer v. Heitner, supra.*

■ The record is clear that service was made upon the Secretary of State on October 17, 1979, pursuant to the long arm statute, and that subsequently a copy of the complaint was sent by registered mail to the O'Neills. A return receipt of that mailing was executed by the O'Neills on October 29, 1979, and an amended complaint to show proof of defendants' nonresidence and service upon them pursuant to 10 *Del.C.* § 3104 was filed with the Court on October 30, 1979. The minimum contacts between the defendants and the forum state are adequately established by the O'Neills' interest in, use and possession of property in Delaware, and service and notification met the standards of due process. Jurisdiction is properly vested in this Court.

CPHA further contends that since the complaint did not pray for a "judgment of Scire Facias Sur Mortgage," and since no "Judgment of Scire Facias Sur Mortgage *in rem*," as a judgment of condemnation of lands, has ever been entered, the writ of levari facias should be quashed, vacated, or set aside. CPHA points to the fact that only an *in personam* judgment has ever been entered, and that that judgment is not a sufficient basis for a sale under 10 *Del.C.* § 5061 et seq. Such an argument is of mere technical merit in light of plaintiff's motion to amend the judgment to reflect the true nature of the present action.

■ Plaintiff's attempt to show proper personal service resulted in an instruction

---

1. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

to enter a judgment *in personam* against the O'Neills rather than a judgment *in rem* which would authorize subsequent seizure and sale. Such an error can be easily corrected by amendment. Irregularities in a judgment render that judgment only voidable, and if the matter causing the irregularity has been removed, a motion to quash will be denied and the execution and levy thereunder will stand. *Jackson v. Sears, Roebuck and Co.*, Ariz.Supr., 315 P.2d 871 (1957). Whether denominated *in rem* or *in personam*, the judgment entered against the O'Neills was a result of their default in the present action, and the interests of justice will not permit the Court to quash the writ of levari facias due to technical irregularities in the judgment upon which it is based.

Recent Delaware Supreme Court decisions in *Brown v. Federal National Mortgage Association*, Del.Supr., 359 A.2d 661 (1976), and *Gelof v. First National Bank*, Del.Supr., 373 A.2d 206 (1977) indicate that all parties with substantial property interests in real property upon which foreclosure proceedings are begun (including equitable and legal title holders, and lien holders) must be afforded basic due process rights of notice and opportunity to be heard in order to protect those interests. In endeavoring to notify CPHA, whose interest the plaintiff properly assumed to be a "substantial" one, plaintiff joined that party as a defendant. In the process plaintiff did not follow exactly Form 1(p) of the Superior Court Civil Rules Sci.Fa.–or Form 13–Complaint in Scire Facias Sur Mortgage. Since the forms provided by the Rules have never been amended to reflect the above decisions, however, technical discrepancies between the official forms and those actually employed in practice should no longer result in summary dispositions. Plaintiff's offer to amend the pleadings should be sufficient to correct any technical deficiencies. In any event, the record indicates that defendant CPHA was properly served in the instant action, and the fact that CPHA has answered through counsel indicates that they were properly apprised of the nature of the action.

CPHA's final claim is that Restrictive Covenant # 24 (to which reference was made in the O'Neill deed), granting them a preemptive right, right of first refusal, or option to purchase the O'Neill property in the event of a sale, should be enforced even in the case of a sheriff's sale pursuant to a writ of levari facias. CPHA urges that since the option is a covenant running with the land, it is binding upon all parties, as well as their heirs, successors, and assigns (including mortgagees).

In support of their position, CPHA cites the *Brown* and *Gelof* decisions as representing the Court's concern for protecting the substantial property interests of various parties. What the Supreme Court sought to protect in *Brown* and *Gelof*, however, were the rights of parties with substantial property interests to notice and opportunity to be heard (procedural due process) rather than the interest itself (substantive due process). Here there is no claim that requirements of procedural due process have been violated. CPHA had noticed of the foreclosure proceeding (service of process through the Secretary of State) and has been afforded an opportunity to be heard (CPHA appeared and answered through counsel).

 Where the language of a covenant is unambiguous, clear, and specific, the rule, similar to that adopted in the construction of statutes, is that no room is left either for interpretation or for construction. Otherwise, however, the paramount rule for the interpretation of covenants is so to expound them as to give effect to the actual intent of the parties. 21 C.J.S. *Covenants* § 20. The language in Restrictive Covenant # 24 is fairly clear:

(24) Resale: In the event the *owner* of any numbered lot in Cotton Patch Hills ... desires to sell the same ... Cotton Patch Hills Association, or its successors shall have thirty (30) days from and after its receipt of such prior offer within which to exercise its prior option to purchase such numbered Lot, together with its buildings and improvements, if any, at

the same price and upon the same terms and conditions. [Emphasis added].

Restrictive Covenant # 24 thus refers only to a sale by the "owner." Since Delaware is generally acknowledged to be a "lien state" as opposed to a "title state," legal title and ownership of property is vested in the purchaser upon sale, with any mortgagee having only the right to a lien against the property. Strictly speaking, then, Restrictive Covenant # 24 can be applied only in relation to a sale by the owners—the O'Neills.

If any ambiguity does exist in the language of the covenant, it is necessary to ascertain the true intention of the parties. In determining that intention, the entire context of the covenant is to be considered. 20 Am.Jur.2d, *Covenants, Conditions*, and *Restrictions*, § 186. Nor can restrictions be enlarged by implication or extended by construction beyond their original intent in order that the general purposes of the parties may be effectuated under new conditions not to be anticipated, or to accomplish a purpose that might have been included had future developments been foreseen. They will not be enforced beyond the fair and natural meaning of the words used, read in light of the circumstances under which they were used. 20 Am.Jur.2d, *Covenants, Conditions*, and *Restrictions*, § 186; *Henlopen Acres, Inc. v. Potter*, Del.Ch., 127 A.2d 476 (1956).

There is no indication from the record that the entire scheme of restrictive covenants contemplated a sale by anyone other than the true owner, as in the case of a sale pursuant to a writ of levari facias. Had such a contingency been expected, CPHA could have included in their covenants a provision similar to that appearing in 7 *Am.Jur. Legal Forms 2d*, 77:85, concerning this very situation.

Plaintiff argues that allowing CPHA's 30–day option to purchase to be enforced at the sale will have a "chilling effect" on the possible purchasers. Prospective buyers will be required to make a down payment of 20% of the purchase price at the time of sale, and still risk the possibility that such a sale might not be confirmed because of CPHA's 30–day option. The purchaser would be forced to go without those funds for at least 30 days. Moreover, the same chilling effect may be created with respect to mortgage money lenders. Banks, mortgage companies, savings and loan institutions, etc., may be less inclined to offer mortgages to purchasers of property if they find their own rights hampered by numerous restrictions in deeds to properties securing the loans. It is no surprise that restrictive covenants which act to restrain trade, are strictly construed. *Nevada Food King, Inc. v. Reno Press Brick Co.*, Nev.Supr., 81 Nev. 135, 400 P.2d 140 (1965); *Tate v. Moran*, Pa.Super., 264 Pa.Super. 540, 400 A.2d 217 (1979).

Finally, CPHA is adequately protected with respect to its interest in the property by its ability to be present at the execution sale to bid, thus affording itself the opportunity at the execution sale to a right of purchase with prior notice. The only difference between the right of purchase at the execution sale and the option retained through Restrictive Covenant # 24 is the time in which CPHA must act. CPHA has had notice, however, since the date of service in this action that a judicial sale of the premises was sought to be conducted for the plaintiff, Equitable Trust Company, for failure of the owners, James M. and Patricia H. O'Neill, to pay the mortgage obligation owed the plaintiff. Thus, Cotton Patch Hills Association has known in excess of 30 days that a sale was contemplated and that the sale would be, in the public venue, to the highest and best bidder.

Accordingly, plaintiff's motions are granted and the CPHA motion is denied.