**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: March 14, 2022
Date Decided: June 14, 2022

Kelly E. Farnan, Esq.
Dorronda R. Bordley, Esq.
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801

Bradley R. Aronstam, Esq.
Holly E. Newell, Esq.
ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, Delaware 19801

James S. Green, Jr.
SEITZ, VAN OGTROP & GREEN, P.A.
222 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801

RE: *Wilmington Friends School, Inc. v. Alapocas Maintenance Corporation et al.*, C.A. No 2021-0655-SG

Dear Counsel:

It is with some reluctance that I begin this Letter Opinion. It was my hope, expressed at oral argument on the instant Cross-Motions for Judgment on the Pleadings, that the matter settle. There are various reasons why a settlement, always favored, was particularly desirable here. One is that the parties and I had imposed upon one of the finest public servants in the long history of our bench and bar to invest his time and energy into mediation.[1] Another, nearly as poignant, is that both

---

[1] Randy Holland, Esq.

parties here are public institutions manifestly doing their best to act in the interests of their organizations and the public at large, as they see it. There are no bad actors here.[2] Nonetheless, it falls to me to decide the legal issues presented; the facts are not in dispute.

The litigation involves Alapocas, a mostly residential neighborhood in north Wilmington subject to deed restrictions. At issue is a scenario that has played out in this Court many times. A homeowners' association (an "HOA"), here the Alapocas Maintenance Corporation and its Directors (collectively, "AMC" or the "Defendant") has relied on deed restrictions to attempt to deny construction upon a property subject to that association, belonging to the Plaintiff Wilmington Friends School, Inc. (the "School" or the "Plaintiff"), a private school. The School intends to expand the development of its campus in Alapocas, currently home to the "Upper School," to incorporate the "Lower School,"—apparently, a school for the primary grades—as well.[3] The School submitted an application of its plans to AMC for review. AMC denied its consent. The School brought this litigation seeking a declaratory judgment that its project was in compliance with the deed restrictions, and must therefore be approved by AMC, or in the alternative that the restrictions are unenforceable. The parties, sensibly, have cross-moved for a judgment on the

---

[2] I complement counsel on their consistent efforts to keep animosity at a minimum, in the best (alas, not invariably followed) tradition of our bar.

[3] What we plebian public-school graduates might call an "elementary school."

2

pleadings, resolved below. At oral argument, AMC clarified its position that it has used the criteria specifically provided to its predecessor to ensure "harmonious" development to deny the School's application, solely on the ground that it will decrease open green space in the neighborhood.

A major construction in a residential neighborhood obviously causes concerns that good neighbors should discuss and accommodate.[4] That statement is precatory, not legal, and ideally those complex concerns would have been addressed in the mediation process, if not before. The legal issue, to the contrary, is simple. Deed restrictions or covenants limit the use of real property, which has historically been disfavored at law. That historic disfavor has ameliorated to an extent to accommodate legislative regulation of property, via zoning, for instance. But private limitations on the full use of property, via deed restrictions, while enforceable, are construed narrowly in favor of the landowner.[5] Any ambiguity must be resolved in favor of the landowner.[6] The burden is on the HOA to show that its actions in

---

[4] A procedure that might be termed Friendly Persuasion.

[5] *See Wild Quail Golf & Country Club Homeowners' Ass'n, Inc. v. Babbitt*, 2022 WL 211648, at *3 (Del. Ch. Jan. 11, 2022) (deed restrictions "'are viewed with suspicion due to the tendency of such review to be arbitrary, capricious, and therefore unreasonable,' and are strictly construed") (quoting *Benner v. Council of Narrows Ass'n of Owners*, 2014 WL 7269740, at *7 (Del. Ch. Dec. 22, 2014), *adopted*, 2015 WL 1206724 (Del.Ch. Mar. 16, 2015)); *Tusi v. Mruz*, 2002 WL 31499312, at *3 (Del. Ch. Oct. 31, 2002) ("[B]ecause they restrict the 'free use of property,' restrictive covenants must be strictly construed.").

[6] *See Dolan v. Villages of Clearwater Homeowner's Ass'n, Inc.*, 2005 WL 2810724, at *3 (Del. Ch. Oct. 21, 2005) ("The Deed Restriction, if ambiguous, of course, must be read in [the homeowner's] favor.").

enforcing the restrictions are non-arbitrary, and are reasonable as applied.[7] A decision to deny improvement based solely on aesthetics is not enforceable, regardless of whether such authority was explicitly granted to an HOA in the deed covenants.[8] Covenants restricting use may not be enforced beyond their explicit terms, nor may they be applied if vague or otherwise permissive of arbitrary enforcement.[9]

AMC relies on Paragraph 5 of the Deed Restrictions applicable to Alapocas. The parties dispute whether the School's property[10] (the "Property") is subject to Paragraph 5, which I assume, without deciding, that it is. Paragraph 5 provides that proposed structures must be submitted for approval to the Woodlawn Trustees—AMC's predecessor—and that the Woodlawn Trustees may refuse any such plans "which in its opinion are not suitable or desirable."[11] In making such a determination, the Woodlawn Trustees "may take into account the suitability of the

---

[7] *Id.* at *4 ("burden is on the Review Board to show its actions are reasonable" in applying deed restrictions).

[8] *See Lawhon v. Winding Ridge Homeowners Ass'n, Inc.*, 2008 WL 5459246, at *5 (Del. Ch. Dec. 31, 2008) ("[R]estrictions based on abstract aesthetic desirability are impermissible.").

[9] *Equitable Tr. Co. v. O'Neill*, 420 A.2d 1196, 1201 (Del. Super. Ct. 1980) (restrictive covenants "will not be enforced beyond the fair and natural meaning of the words used"); *Seabreak Homeowners Ass'n, Inc. v. Gresser*, 517 A.2d 263, 269 (Del. Ch. 1986) ("[W]here the language used in the restrictive covenant empowering the committee is overly vague, imprecise, or so unclear as not to lend itself to evenhanded application, then the grant of authority is normally not enforceable."), *aff'd*, 538 A.2d 1113 (Del. 1988).

[10] The Property is unlike the residential lots in Alapocas. It is a large parcel—21 acres—indicated on the plot plan of Alapocas as the "Friends School tract." *See* Oral Arg. Tr. Pl.'s Defs.' Cross-Mots. J. Pleadings at 6:19–7:6, 80:13–17 [hereinafter "Oral Arg. Tr."].

[11] Verified Compl. Declaratory J. Inj. Relief, Ex. A ¶ 5, Dkt. No. 1.

4

proposed building[,] . . . the materials of which it is to be built, . . . the site upon which it is proposed[,] . . . the harmony thereof with the surroundings and the effect of the building . . . on the outlook from adjacent or neighboring properties."[12]  As a transfer of the ability to develop property from the owner to the predecessor of AMC, this is manifestly overbroad.  It purports to allow AMC to act arbitrarily based on "suitability," which is a concept without defining or limiting characteristics.  There are no objective criteria upon which a property owner may know what is permitted, or within which the discretion of AMC is cabined.  AMC concedes that the only one of the criteria set out in Paragraph 5 that is *not* unenforceable is "harmony . . . with the surroundings."  This brief Letter Opinion thus focuses on that criterion.

AMC has rejected the School's application to construct a primary school building and associated structures because that will result in loss of open space and green areas on the Property.  AMC denies that this action is arbitrary, based on the criteria it relied on, which it maintains is the lack of "harmony with the surroundings" represented by any development of a significant part of the Property.  To be clear, AMC does not object to the appearance or location of the proposed construction, but simply to its use, for school buildings and parking lots, of ground currently devoted to lawn and ball fields.[13]  This loss of green open space, per AMC,

---

[12] *Id.*

[13] In the words of AMC's counsel, "the vastness of the [School's] proposal and the consequences of that proposal, would be inharmonious with its surroundings because it would decrease the open,

5

would be unharmonious with the rest of Alapocas. But the lack of "harmony" as AMC attempts to apply it is no less arbitrary than a finding of "unsuitability." AMC simply wants to maintain the green and pleasant aspect of much of the Property as an amenity of Alapocas. This is entirely understandable; I feel the same way about the wooded vacant lot adjoining my own house. But those development rights belong to the School, absent an enforceable limitation in the deed restrictions. AMC cannot enforce an open space requirement, not provided for explicitly via covenant, and that it applies to no other property in Alapocas, under the rubric of "harmony." The "harmony" restriction, as applied to the School, is, in my view, a matter of the aesthetic sensibilities of AMC's current board, nothing more.

AMC relies on a case in this Court, *Dolan v. Villages of Clearwater Homeowner's Association, Inc.*[14] That case involved deed restrictions that permitted an architectural review board of an HOA to reject proposed construction as "visually inharmonious" with the surrounding neighborhood.[15] The *Dolan* Court found the deed restrictions enforceable.[16]

The facts in *Dolan* are significantly different from the instant situation, and the holding in *Dolan* is strictly cabined by those facts. The section of the "Villages"

---

green space at the heart of the [School's] campus and the neighborhood." Oral Arg. Tr. at 44:14–20.
[14] *Dolan v. Villages of Clearwater Homeowner's Ass'n, Inc.*, 2005 WL 1252351 (Del. Ch. May 12, 2005), *aff'd*, 2005 WL 2810724 (Del. Ch. Oct. 21, 2005).
[15] *Id.* at *7.
[16] *Id.*

6

in question involved homes built in Key West style—stilt homes with white pea gravel from the street to and under the house.[17] The white gravel yards were obvious to the plaintiff at the time she bought her house, and to all who viewed the development.[18] The HOA had consistently denied requests to remove the gravel yards from "Key West" homes.[19] The homeowner-plaintiff's proposed improvement was to remove the pea gravel and replace it with pavement.[20] That was inconsistent with the "Key West" style, which itself was a unique and coherent style including the gravel yard as a significant architectural element.[21] The Court found, therefore, that the "visual harmony" restriction under that particular set of facts could be (and had been) applied in a non-arbitrary manner.[22]

The *Dolan* rationale is not applicable here.[23] There is only one school in Alapocas; the lots in Alapocas are not restricted as to percentage of open space by

---

[17] *Id.* at *1.
[18] *See id.* at *1–2, 5, 7.
[19] *Id.* at *5, 7.
[20] *Id.* at *1–2.
[21] *Id.* at *7.
[22] *Id.*
[23] AMC also cites to *Alliegro v. Home Owners of Edgewood Hills, Inc.*, 122 A.2d 910 (1956) (in neighborhood of dwellings averaging approximately 2,400 square feet and 30,000 cubic feet, proposed cottage with 1,220 feet and 18,100 cubic feet may be objectively inharmonious); *Lawhon*, 2008 WL 5459246 (proposed deviation from consistent color scheme may be objectively inharmonious); and *Christine Manor Civic Ass'n v. Gullo*, 2007 WL 3301024 (Del. Ch. Nov. 2, 2007) (very large garage may be objectively inharmonious). The rationale applied to *Dolan*, above, makes these cases unpersuasive here, as well. These cases all involve restrictions on residential lots made objective by visual reference to other such lots. I make no decision on the enforceability of the "harmony" restrictions here with respect to the residential lots within Alapocas.

7

the deed covenants; and no other Alapocas property is subject to use restriction simply because such use would decrease open space. Unlike in *Dolan*, here there are no criteria by which to apply the "harmonious" standard to the School on density grounds, other than whether the current board of the AMC dislikes the improvement proposed.

This Court has recently examined a deed restriction purporting to give an HOA a right to reject improvements on ground of harmony, in a thoughtful Master's Report, based on a covenant strikingly similar to Paragraph 5 here. In that case, *Civic Association of Surrey Park v. Riegel*, the HOA denied permission to construct a shed, as "not suitable, desirable or in harmony with the neighborhood."[24] The deed covenant in question authorized the HOA to reject plans as "'not suitable or desirable, in [the HOA's] opinion, for aesthetic or other reasons' with the right to take into account 'the harmony thereof with respect to the surroundings and the effect of the building . . . as planned, on the outlook for the adjacent or neighboring property.'"[25] The Master found these criteria—directly comparable to those in the Alapocas restriction—unenforceable: "These three inquiries— suitability/desirability, harmony and outlook—are overly vague, imprecise, and unclear as written."[26] The *Riegel* Court rejected the first and third criteria as nothing

---

[24] 2022 WL 1597452, at *1 (Del. Ch. May 19, 2022).
[25] *Id.* at *12.
[26] *Id.*

8

more than a delegation to the HOA of development oversight based on its sense of aesthetics—a delegation this court has repeatedly found unenforceable.[27] The Master then noted that "harmony restrictions, like the one here, have only been found enforceable when that community possesses a 'sufficiently coherent visual style' enabling fair and even-handed application."[28] Finding that coherence was lacking in the community in question, the Master found the provision unenforceable.[29]

So it is here with the near-identical Paragraph 5. AMC here does not even argue that the style of the improvements the School desires are unharmonious with the residential architecture of Alapocas. Instead, it seeks to apply its sense of aesthetics—open space is better. Perhaps so, but that decision is for the landowner.

---

[27] *Id.* at *12–13. *See also Campanelli v. Coffee Run Condo. Council*, 2021 WL 3120198, at *7 (Del. Ch. July 23, 2021) (declaration plan that allowed plans to "'var[y]' from the Declaration Plan" without providing standards "for how the Council will determine whether variances are acceptable" was unenforceable); *O'Marrow v. Roles*, 2015 WL 5714847, at *10 (Del. Ch. Sept. 30, 2015) (restrictive covenants that left "to the discretion of a Board of Governors the determination whether the color or construction of an outbuilding is 'similar' to existing barns or buildings in HFA" was "too vague and imprecise to be enforceable"); *Serv. Corp. of Westover Hills v. Guzzetta*, 2009 WL 5214876, at *6 (Del. Ch. Dec. 22, 2009) (restrictive covenant that "provide[d] no guidance as to how . . . to consider 'the suitability of the proposed building or other structure,' the 'materials of which it is to be built,' the site where it is 'proposed to erect the same,' or 'the effect of the building or other structure . . . on the outlook from the adjacent or neighboring property'" were "unreasonable as a matter of law"); *Benner*, 2014 WL 7269740, at *9 (deed restriction "unenforceable under Delaware law because of the absence of any clear and precise standard governing the review").
[28] *Riegel*, 2022 WL 1597452, at *13.
[29] *Id.*

To what extent is a school harmonious, or otherwise, with a residential development?[30] What portion of its land may the School develop, consistent with AMC's understanding of "harmony?" No one can say. Where can the School locate additional buildings? There is no way to tell, other than to rely on an arbitrary decision from AMC. The "harmony" provision cannot be applied to limit the density of construction on the property in a non-arbitrary way, and thus is unenforceable with respect to the School. Accordingly, the School's motion for judgment on the pleadings is granted, and AMC's is denied, to the extent consistent with this Letter Opinion. The parties should submit an appropriate form of order, and should inform me what issues, if any, remain.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III

cc:    All counsel of record (by *File & ServeXpress*)

---

[30] The Oxford English Dictionary provides numerous definitions for "harmony," the most pertinent of which appears to be a "[c]ombination of parts or details with each other, so as to produce an aesthetically pleasing effect." *Harmony*, SHORTER OXFORD ENGLISH DICTIONARY, VOL. I (3d ed. 1973). Just so: absent the unusual situation of a coherent development regime as in *Dolan* which in context can provide objective criteria, an appeal to harmony is simply an appeal to an aesthetic sensibility. And with harmony, one HOA's Bach or Brahms is another's John Cage.