Neponsit Property Owners' Association, Inc., Respondent, *v.* Emigrant Industrial Savings Bank, Appellant.

Argued January 26, 1938; decided May 24, 1938.

*Walter E. Warner, Jr., William E. Grady, Jr., R. O'Gorman* and *E. J. O'Gorman* for appellant. The complaint fails to allege that plaintiff has title to the roads, paths, parks, beach and sewers nor to any land for the benefit of which the covenant was created. It follows that there is no privity of estate between plaintiff and its

assignor; therefore, plaintiff has no foundation upon which to base the action and its complaint should be dismissed. (*Graves* v. *Deterling*, 120 N. Y. 447; *Kennilwood Owners' Assn.* v. *Jaybro R. & D. Co.*, 156 Misc. Rep. 604; *Lawrence Park Realty Co.* v. *Crichton*, 218 App. Div. 374; *Riverview Manor Assn.* v. *Bruckner*, 223 N. Y. 526; *Miller* v. *Clary*, 210 N. Y. 127; *Neponsit Property Owners' Assn.* v. *Mayer*, 250 App. Div. 738.) The alleged lien based upon the covenant set forth in the complaint is an interest or estate in land which plaintiff seeks to foreclose. Said alleged lien is not created by any writing signed by defendant's predecessors in title and is, therefore, unenforceable under section 242 of the Real Property Law (Cons. Laws, ch. 50). (*Kennilwood Owners' Assn.* v. *Jaybro Realty & Development Co.*, 156 Misc. Rep. 604.)

*Ralph S. Hein* for respondent. Defendant's motion for judgment on the pleadings was properly denied. (*Lawrence Park Realty Co.* v. *Crichton*, 218 App. Div. 374; *Neponsit Property Owners' Assn., Inc.*, v. *Mayer*, 250 App. Div. 738; *Kennilwood Owners' Assn.* v. *Jaybro Realty & Development Co.*, 156 Misc. Rep. 604; *Mygatt* v. *Coe*, 124 N. Y. 212; 142 N. Y. 78; 147 N. Y. 456; 152 N. Y. 457; *Korn* v. *Campbell*, 192 N. Y. 490; *Trustees of Columbia College* v. *Lynch*, 70 N. Y. 440; *Hodge* v. *Sloan*, 107 N. Y. 244; *Equitable Life Assur. Soc.* v. *Brennan*, 148 N. Y. 661; *Vogeler* v. *Alwyn Improvement Corp.*, 247 N. Y. 131; *Matter of Public Beach*, 269 N. Y. 64.) Plaintiff's motion to strike out the seven defenses and one counterclaim contained in the answer was properly granted. (*Hoffmann Brewing Co.* v. *Wuttge*, 200 App. Div. 357; 234 N. Y. 469; *Weseman* v. *Wingrove*, 85 N. Y. 353; *Pollitz* v. *Wabash R. R. Co.*, 207 N. Y. 113; *Newburger* v. *Lubell*, 257 N. Y. 383; *James* v. *Alderton Dock Yards*, 256 N. Y. 298; *Bareham* v. *City of Rochester*, 246 N. Y. 140; *City of New York* v. *Maltbie*, 248 App. Div. 39.)

LEHMAN, J. The plaintiff, as assignee of Neponsit Realty Company, has brought this action to foreclose a lien upon land which the defendant owns. The lien, it is alleged, arises from a covenant, condition or charge contained in a deed of conveyance of the land from Neponsit Realty Company to a predecessor in title of the defendant. The defendant purchased the land at a judicial sale. The referee's deed to the defendant and every deed in the defendant's chain of title since the conveyance of the land by Neponsit Realty Company purports to convey the property subject to the covenant, condition or charge contained in the original deed. The answer of the defendant contains, in addition to denials of some of the allegations of the complaint, seven separate affirmative defenses and a counterclaim. The defendant moved for judgment on the pleadings, dismissing the complaint pursuant to rule 112 of the Rules of Civil Practice. The plaintiff moved to dismiss the counterclaim pursuant to rule 109, subdivision 6, and to strike out the affirmative defenses contained in the answer pursuant to rule 103, as well as pursuant to rule 109, subdivision 6, of the Rules of Civil Practice. The motion of the plaintiff was granted and the motion of the defendant denied. The Appellate Division unanimously affirmed the order of the Special Term and granted leave to appeal to this court upon certified questions.

Detailed analysis of the allegations contained in the "separate defenses" would serve no useful purpose. In part, they are merely argumentative denials of allegations of the complaint which the court might properly strike out pursuant to rule 103, as "redundant, repetitious [and] unnecessary," for those allegations of the complaint are put in issue by direct denials in the answer. Upon this appeal the defendant contends that the land which it owns is not subject to any lien or charge which the plaintiff may enforce. Its arguments are confined to serious questions of law. Some of these questions are properly

raised by the defendant's challenge of the sufficiency of the complaint; other questions are raised by the plaintiff's challenge of the sufficiency of the separate defenses. The two motions, indeed, involve, in general, the same questions. The form in which the questions are raised is unimportant. On this appeal we may confine our consideration to the merits of these questions, and, in our statement of facts, we drew indiscriminately from the allegations of the complaint and the allegations of the answer.

It appears that in January, 1911, Neponsit Realty Company, as owner of a tract of land in Queens county, caused to be filed in the office of the clerk of the county a map of the land. The tract was developed for a strictly residential community, and Neponsit Realty Company conveyed lots in the tract to purchasers, describing such lots by reference to the filed map and to roads and streets shown thereon. In 1917, Neponsit Realty Company conveyed the land now owned by the defendant to Robert Oldner Deyer and his wife by deed which contained the covenant upon which the plaintiff's cause of action is based.

That covenant provides: " And the party of the second part for the party of the second part and the heirs, successors and assigns of the party of the second part further covenants that the property conveyed by this deed shall be subject to an annual charge in such an amount as will be fixed by the party of the first part, its successors and assigns, not, however exceeding in any year the sum of four ($4.00) Dollars per lot 20 x 100 feet. The assigns of the party of the first part may include a Property Owners' Association which may hereafter be organized for the purposes referred to in this paragraph, and in case such association is organized the sums in this paragraph provided for shall be payable to such association. The party of the second part for the party of the second part and the heirs, successors and assigns of the party of the second part covenants that they will pay this charge to

the party of the first part, its successors and assigns on the first day of May in each and every year, and further covenants that said charge shall on said date in each year become a lien on the land and shall continue to be such lien until fully paid. Such charge shall be payable to the party of the first part or its successors or assigns, and shall be devoted to the maintenance of the roads, paths, parks, beach, sewers and such other public purposes as shall from time to time be determined by the party of the first part, its successors or assigns. And the party of the second part by the acceptance of this deed hereby expressly vests in the party of the first part, its successors and assigns, the right and power to bring all actions against the owner of the premises hereby conveyed or any part thereof for the collection of such charge and to enforce the aforesaid lien therefor.

" These covenants shall run with the land and shall be construed as real covenants running with the land until January 31st, 1940, when they shall cease and determine."

Every subsequent deed of conveyance of the property in the defendant's chain of title, including the deed from the referee to the defendant, contained, as we have said, a provision that they were made subject to covenants and restrictions of former deeds of record.

There can be no doubt that Neponsit Realty Company intended that the covenant should run with the 'and and should be enforceable by a property owners association against every owner of property in the residential tract which the realty company was then developing. The language of the covenant admits of no other construction. Regardless of the intention of the parties, a covenant will run with the land and will be enforceable against a subsequent purchaser of the land at the suit of one who claims the benefit of the covenant, only if the covenant complies with certain legal requirements. These requirements rest upon ancient rules and precedents. The age-old essentials of a real covenant, aside from the form of

the covenant, may be summarily formulated as follows: (1) it must appear that grantor and grantee intended that the covenant should run with the land; (2) it must appear that the covenant is one " touching " or " concerning " the land with which it runs; (3) it must appear that there is " privity of estate " between the promisee or party claiming the benefit of the covenant and the right to enforce it, and the promisor or party who rests under the burden of the covenant. (Clark on Covenants and Interests Running with Land, p. 74.) Although the deeds of Neponsit Realty Company conveying lots in the tract it developed " contained a provision to the effect that the covenants ran with the land, such provision in the absence of the other legal requirements is insufficient to accomplish such a purpose." (*Morgan Lake Co.* v. *N. Y., N. H. & H. R. R. Co.*, 262 N. Y. 234, 238.) In his opinion in that case, Judge CRANE posed but found it unnecessary to decide many of the questions which the court must consider in this case.

The covenant in this case is intended to create a charge or obligation to pay a fixed sum of money to be " devoted to the maintenance of the roads, paths, parks, beach, sewers and such other public purposes as shall from time to time be determined by the party of the first part [the grantor], its successors or assigns." It is an affirmative covenant to pay money for use in connection with, but not upon, the land which it is said is subject to the burden of the covenant. Does such a covenant " touch " or " concern " the land? These terms are not part of a statutory definition, a limitation placed by the State upon the power of the courts to enforce covenants *intended* to run with the land by the parties who entered into the covenants. Rather they are words used by courts in England in old cases to describe a limitation which the courts themselves created or to formulate a test which the courts have devised and which the courts voluntarily apply. (Cf. *Spencer's Case*, Coke, vol. 3, part 5, p. 16; *Mayor of*

*Congleton* v. *Pattison*, 10 East, 316.) In truth the test so formulated is too vague to be of much assistance and judges and academic scholars alike have struggled, not with entire success, to formulate a test at once more satisfactory and more accurate. " It has been found impossible to state any absolute tests to determine what covenants touch and concern land and what do not. The question is one for the court to determine in the exercise of its best judgment upon the facts of each case." (Clark, *op. cit.* p. 76.)

Even though that be true, a determination by a court in one case upon particular facts will often serve to point the way to correct decision in other cases upon analogous facts. Such guideposts may not be disregarded. It has been often said that a covenant to pay a sum of money is a personal affirmative covenant which usually does not concern or touch the land. Such statements are based upon English decisions which hold in effect that only covenants, which compel the covenanter to submit to some *restriction on the use* of his property, touch or concern the land, and that the burden of a covenant which requires the covenanter to do an affirmative act, even on his own land, for the benefit of the owner of a " dominant " estate, does not run with his land. (*Miller* v. *Clary*, 210 N. Y. 127.) In that case the court pointed out that in many jurisdictions of this country the narrow English rule has been criticized and a more liberal and flexible rule has been substituted. In this State the courts have not gone so far. We have not abandoned the historic distinction drawn by the English courts. So this court has recently said: " Subject to a few exceptions not important at this time, there is now in this State a settled rule of law that a covenant to do an affirmative act, as distinguished from a covenant merely negative in effect, does not run with the land so as to charge the burden of performance on a subsequent grantee [citing cases]. This is so though the burden of

such a covenant is laid upon the very parcel which is the subject-matter of the conveyance." (*Guaranty Trust Co.* v. *N. Y. & Queens County Ry. Co.,* 253 N. Y. 190, 204, opinion by CARDOZO, Ch. J.)

Both in that case and in the case of *Miller* v. *Clary* (*supra*) the court pointed out that there were some exceptions or limitations in the application of the general rule. Some promises to pay money have been enforced, as covenants running with the land, against subsequent holders of the land who took with notice of the covenant. (Cf. *Greenfarb* v. *R. S. K. Realty Corp.,* 256 N. Y. 130; *Morgan Lake Co.* v. *N. Y., N. H. & H. R. R. Co., supra.*) It may be difficult to classify these exceptions or to formulate a test of whether a particular covenant to pay money or to perform some other act falls within the general rule that ordinarily an affirmative covenant is a personal and not a real covenant, or falls outside the limitations placed upon the general rule. At least it must " touch " or " concern " the land in a substantial degree, and though it may be inexpedient and perhaps impossible to formulate a rigid test or definition which will be entirely satisfactory or which can be applied mechanically in all cases, we should at least be able to state the problem and find a reasonable method of approach to it. It has been suggested that a covenant which runs with the land must affect the legal relations — the advantages and the burdens — of the parties to the covenant, as owners of particular parcels of land and not merely as members of the community in general, such as taxpayers or owners of other land. (Clark, *op. cit.* p. 76. Cf. Professor Bigelow's article on The Contents of Covenants in Leases, 12 Mich. L. Rev. 639; 30 Law Quarterly Review, 319.) That method of approach has the merit of realism. The test is based on the effect of the covenant rather than on technical distinctions. Does the covenant impose, on the one hand, a burden upon an interest in land, which

on the other hand increases the value of a different interest in the same or related land?

Even though we accept that approach and test, it still remains true that whether a particular covenant is sufficiently connected with the use of land to run with the land, must be in many cases a question of degree. A promise to pay for something to be done in connection with the promisor's land does not differ essentially from a promise by the promisor to do the thing himself, and both promises constitute, in a substantial sense, a restriction upon the owner's right to use the land, and a burden upon the legal interest of the owner. On the other hand, a covenant to perform or pay for the performance of an affirmative act disconnected with the use of the land cannot ordinarily touch or concern the land in any substantial degree. Thus, unless we exalt technical form over substance, the distinction between covenants which run with land and covenants which are personal, must depend upon the effect of the covenant on the legal rights which otherwise would flow from ownership of land and which are connected with the land. The problem then is: Does the covenant in purpose and effect *substantially* alter these rights?

The opinion in *Morgan Lake Co.* v. *N. Y., N. H. & H. R. R. Co.* (*supra*) foreshadowed a classification based upon substance rather than upon form. It was not the first case, however, in which this court has based its decision on the substantial effect of a covenant upon legal relations of the parties as owners of land. Perhaps the most illuminating illustration of such an approach to the problem may be drawn from the " party wall " cases in this State which are reviewed in the opinion of the court in *Sebald* v. *Mulholland* (155 N. Y. 455). The court there pointed out that in cases, cited in the opinion, where by covenant between owners of adjoining parcels of land, " a designated party was authorized to build a party wall, the other agreeing to pay a portion of its value

when it should be used by him," the court was constrained to hold that " the agreement was a present one, the party who was to build and the one who was to pay were expressly designated, and the covenant to pay was clearly a personal one " (p. 464). At the same time, the court also pointed out that such covenants must be distinguished from the covenants (passed upon by the court in the earlier case of *Mott* v. *Oppenheimer*, 135 N. Y. 312), " by which the parties conferred, each upon the other, the authority to erect such [party] wall, and dedicated to that use a portion of each of their lots, with an agreement that if either should build the other might have the right to use it by paying his share of the expense " (p. 463). In such a case, it was said by the court, " It was not and could not then be known who would build, or who was to pay when the wall was used. The agreement was wholly prospective, and its purpose was to impose upon the land of each, and not upon either personally, the burden of a future party wall, and to secure to the land and, thus, to its subsequent owners, a corresponding right to the use of the wall by paying one-half of its value * * *. In that case the character of the agreement, its obvious purpose, its prospective provisions, and the situation of the lands when the agreement was made, all concurred in showing an intent that its covenants should run with the land, and clearly justified the court in so holding " (pp. 463–4).

Looking at the problem presented in this case from the same point of view and stressing the intent and substantial effect of the covenant rather than its form, it seems clear that the covenant may properly be said to touch and concern the land of the defendant and its burden should run with the land. True, it calls for payment of a sum of money to be expended for " public purposes " upon land other than the land conveyed by Neponsit Realty Company to plaintiff's predecessor in title. By that conveyance the grantee, however, obtained not only title to particular lots, but an easement or right of common

enjoyment with other property owners in roads, beaches, public parks or spaces and improvements in the same tract. For full enjoyment in common by the defendant and other property owners of these easements or rights, the roads and public places must be maintained. In order that the burden of maintaining public improvements should rest upon the land benefited by the improvements, the grantor exacted from the grantee of the land with its appurtenant easement or right of enjoyment a covenant that the burden of paying the cost should be inseparably attached to the land which enjoys the benefit. It is plain that any distinction or definition which would exclude such a covenant from the classification of covenants which " touch " or " concern " the land would be based on form and not on substance.

Another difficulty remains. Though between the grantor and the grantee there was privity of estate, the covenant provides that its benefit shall run to the assigns of the grantor who " may include a Property Owners' Association which may hereafter be organized for the purposes referred to in this paragraph." The plaintiff has been organized to receive the sums payable by the property owners and to expend them for the benefit of such owners. Various definitions have been formulated of " privity of estate " in connection with covenants that run with the land, but none of such definitions seems to cover the relationship between the plaintiff and the defendant in this case. The plaintiff has not succeeded to the ownership of any property of the grantor. It does not appear that it ever had title to the streets or public places upon which charges which are payable to it must be expended. It does not appear that it owns any other property in the residential tract to which any easement or right of enjoyment in such property is appurtenant. It is created solely to act as the assignee of the benefit of the covenant, and it has no interest of its own in the enforcement of the covenant.

The arguments that under such circumstances the plaintiff has no right of action to enforce a covenant running with the land are all based upon a distinction between the corporate property owners association and the property owners for whose benefit the association has been formed. If that distinction may be ignored, then the basis of the arguments is destroyed. How far privity of estate in technical form is necessary to enforce in equity a restrictive covenant upon the use of land, presents an interesting question. Enforcement of such covenants rests upon equitable principles (*Tulk* v. *Moxhay*, 2 Phillips, 774; *Trustees of Columbia College* v. *Lynch*, 70 N. Y. 440; *Korn* v. *Campbell*, 192 N. Y. 490), and at times, at least, the violation " of the restrictive covenant may be restrained at the suit of one who owns property, or for whose benefit the restriction was established, irrespective of whether there were privity either of estate or of contract between the parties, or whether an action at law were maintainable." (*Cheseboro* v. *Moers*, 233 N. Y. 75, 80.) The covenant in this case does not fall exactly within any classification of " restrictive " covenants, which have been enforced in this State (Cf. *Korn* v. *Campbell*, 192 N. Y. 490), and no right to enforce even a restrictive covenant has been sustained in this State where the plaintiff did not own property which would benefit by such enforcement so that some of the elements of an equitable servitude are present. In some jurisdictions it has been held that no action may be maintained without such elements. (But cf. *Van Sant* v. *Rose*, 260 Ill. 401.) We do not attempt to decide now how far the rule of *Trustees of Columbia College* v. *Lynch* (*supra*) will be carried, or to formulate a definite rule as to when, or even whether, covenants in a deed will be enforced, upon equitable principles, against subsequent purchasers with notice, at the suit of a party without privity of contract or estate. (Cf. " Equitable Rights and Liabilities of Strangers to a Contract," by Harlan F.

Stone, 18 Columbia Law Review, 291.) There is no need to resort to such a rule if the courts may look behind the corporate form of the plaintiff.

The corporate plaintiff has been formed as a convenient instrument by which the property owners may advance their common interests. We do not ignore the corporate form when we recognize that the Neponsit Property Owners Association, Inc., is acting as the agent or representative of the Neponsit property owners. As we have said in another case: when Neponsit Property Owners Association, Inc., " was formed, the property owners were expected to, and have looked to that organization as the medium through which enjoyment of their common right might be preserved equally for all." (*Matter of City of New York* [*Public Beach*], 269 N. Y. 64, 75.) Under the conditions thus presented we said: " it may be difficult, or even impossible, to classify into recognized categories the nature of the interest of the membership corporation and its members in the land. The corporate entity cannot be disregarded, nor can the separate interests of the members of the corporation " (p. 73). Only blind adherence to an ancient formula devised to meet entirely different conditions could constrain the court to hold that a corporation formed as a medium for the enjoyment of common rights of property owners owns no property which would benefit by enforcement of common rights and has no cause of action in equity to enforce the covenant upon which such common rights depend. Every reason which in other circumstances may justify the ancient formula may be urged in support of the conclusion that the formula should not be applied in this case. In substance if not in form the covenant is a restrictive covenant which touches and concerns the defendant's land, and in substance, if not in form, there is privity of estate between the plaintiff and the defendant.

We have considered the other contentions of the defendant and especially the defense that the alleged

lien based upon the covenant set forth in the complaint constitutes an interest in land and is unenforceable under the provisions of sections 242 and 259 of the Real Property Law (Cons. Laws, ch. 50). We find the defense insufficient.

The order should be affirmed, with costs, and the certified questions answered in the affirmative. (See 278 N. Y. 704.)

CRANE, Ch. J., O'BRIEN, LOUGHRAN, FINCH and RIPPEY, JJ., concur; HUBBS, J., taking no part.

Order affirmed, etc.