ESTATE CARLTON HOME AND PROPERTY OWNERS
ASSOCIATION, Plaintiff

v.

YUSUF DAAS, FAKHRI MUSTAFA, AHMAD YUSUF and
ANNETTE SCHULTZ, Defendants

Civil Nos. 1411/1978, 1412/1978, 1413/1978
and 1453/1978

Territorial Court of the Virgin Islands

Div. of St. Croix at Christiansted

August 2, 1979

501

ROLAND B. SCOTT, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

EDWARD J. OCEAN, ESQ., Christiansted, St. Croix, V.I., *for Daas, Mustafa and Yusuf*

RUSSELL B. JOHNSON, ESQ., Christiansted, St. Croix, V.I., *for Schultz*

SILVERLIGHT, *Judge*

MEMORANDUM OPINION AND JUDGMENT

These actions, all of which involve common questions of

law and fact, were consolidated for trial under the authority of Rule 42(a), F.R.C.P.

Plaintiff, an unincorporated landowners association (hereinafter "Association"), asserts that it is vested with the right to assess a portion of subdivision roadway maintenance costs against each defendant, pursuant to the provisions of certain covenants and conditions affecting their land.[1]

Association alleges that its rights accrue by reason of a "Declaration for Subdivision" recorded in 1957 by R & L Joint Venture as owner of Unit 9 Whim Estate (hereinafter R & L Declaration),[2] and also by reason of a "Declaration of Covenants and Restrictions for Subdivision" recorded in 1960 by Cain-Carlton, Inc., as owner of Parcel 2 of Cane Estate and Parcel 3A of Estate Carlton (hereinafter Cain-Carlton Declaration).[3]

These declarations govern separate, distinct subdivisions. While they both impose an obligation upon owners

---

[1] Title to the lands in question is held as follows:
   *Plot Nos. 126 and 128D, Estate Whim,* owned by Annette Calfas Schultz by deed from James Ayer, et al., recorded on May 12, 1970, in P.C. 79, P. 188. See Plaintiff's Exhibit No. 8 in evidence.
   *Plot No. 60, Estate Carlton,* owned by Fakhri Mustafa by deed from Anthony Ayer, recorded on February 1, 1972, in P.C. 94, P. 402. See Plaintiff's Exhibit No. 6 in evidence.
   *Plot No. 117, Estate Carlton,* owned by Fakhri Mustafa by deed by L'Huillier S. Sheaff, recorded on February 9, 1972, in P.C. 95, P. 58. See Plaintiff's Exhibit No. 7 in evidence.
   *Plot No. 121, Estate Carlton,* owned by Ahmad Yusuf by deed of Mahmoud Yusuf, recorded on June 13, 1977, in P.C. 138, P. 298. See Plaintiff's Exhibit No. 3 in evidence.
   *Plot No. 122, Estate Carlton,* owned by Ahmad Yusuf by deed of Mahmoud Yusuf, recorded on June 13, 1977, in P.C. 183, P. 200. See Plaintiff's Exhibit No. 4 in evidence.
   *Plot No. 120, Estate Cain-Carlton,* owned by Yusuf Daas by deed of O. Frank McGregor, et al., recorded on December 22, 1971, in P.C. 94, P. 77. See Plaintiff's Exhibit No. 1 in evidence.

[2] Recorded in the Office of the Recorder of Deeds, Christiansted, St. Croix, on October 7, 1957, at P.C. VII, P. 29. Among the 17 lots listed in the declaration as made subject to its restrictions is Plot 126, Estate Whim, later acquired by defendant Schultz. See Plaintiff's Exhibit No. 9 in evidence.

[3] Recorded in the Office of the Recorder of Deeds, Christiansted, St. Croix, on January 11, 1960, at P.C. 3M, P. 260. Among the lots in the subdivision and subject to this declaration are Plots 60 and 117, afterwards acquired by defendant Mustafa; Plot 120, acquired by defendant Daas; and Plots 120 and 121, acquired by defendant Yusuf.

to pay roadway maintenance costs in the applicable subdivision, the proportions vary.

The R & L Declaration provides that all owners of plots in that subdivision shall contribute proratably for the maintenance and care of all its roadways.[4]

The Cain-Carlton Declaration provides that, after 1961, the owner of each plot in that subdivision will pay $1/50$th of the annual cost of road maintenance with a minimum assessment of $50.00 per year for each plot.[5]

## I—VALIDITY AND ENFORCEABILITY OF COVENANTS

■ The essential elements of a covenant affecting real property are well-established. It must appear that: (1) the grantor and the grantee intended the covenant to run with the land; (2) the covenant is one that "touches" or "concerns" the land with which it runs; and (3) there is privity of estate between the party claiming the benefit of the covenant and the right to enforce it, and the party who rests under its burden. Neponsit Property Owners' Ass'n v. Emigrant Industrial Savings Bank, 15 N.E.2d 793 (N.Y., 1938); Clark on Covenants and Interests Running with Land, p. 74.

■ Each of these elements is present with respect to the restrictions in question. Both the R & L Declaration and the Cain-Carlton Declaration contain a provision that the covenants are to run with the land, and the deeds

---

[4] Paragraph 8 of this declaration provides that: "All owners of plots in this subdivision shall have a perpetual easement over and upon all roadways in said subdivision and shall contribute proratably with each other in the expense of maintenance and care of such roadways."

[5] Paragraph 10 of this declaration provides that: "*Roadway Easement.* All owners of plots in this subdivision shall have a perpetual easement over and upon all roadways as constructed, located or relocated by Cain-Carlton, Inc. in this subdivision. However, as a condition to the continued use and enjoyment of said roadways the owners, in accepting title and this easement, covenant that after 1961 the owner of each plot will pay $1/50$th of the total cost of road maintenance in the subdivision annually (with a minimum assessment of $50.00 against each plot, per year.) Also, that at such time that there shall be a minimum of 25 plots sold a landowners association will be formed to take over the maintenance of the roads from Cain-Carlton, Inc."

under which the defendants took title each stated that the conveyance was subject to the covenants and restrictions of record. There can, therefore, be no doubt that the covenants were intended to run with the land.

■ The covenants were intended to create an obligation by each owner to pay a proportionate share of the expenses incurred in maintaining the roads in the respective subdivisions. They are affirmative covenants to pay money for the use of subdivision roads which service the land subject to the burden of the covenants. By the terms of conveyance, the defendants received not only title to their lots, but an easement in the roads in their subdivision. In order that the responsibility for maintaining these roads would fall upon the landowners who benefited by them, the subdividers specified in the recorded declarations that the burden of paying the expense would attach to the land which enjoys the benefits. Such covenants have properly been held to "touch" and "concern" the land. Neponsit, supra; Leh v. Burke, 331 A.2d 755 (Pa., 1974); Hughes v. City of Cincinnati, 195 N.E.2d 552 (Ohio, 1964); Stephens Co. v. Lisk, 82 S.E.2d 99 (N.C., 1954).

■ Privity of estate, which connotes a mutual or successive relationship to the same property rights, is present between the plaintiff as successor in interest of the original covenantors, R & L Joint Venture and Cain-Carlton, Inc., and the defendants whose predecessors in interest were the original covenantees.

■ These, then, are valid and enforceable covenants. Clearly, they apply to the lots in issue. See Estate Carlton Home and Property Owners, et al. v. Schultz, et al., D.C., St. T/St. J., Civil No. 331/1975, Decided 12/30/77.

II—EXPENSES INCIDENTAL TO MAINTENANCE

■ This court holds that the drafters of the covenants

contemplated the owners would share costs, including not only roadway maintenance, but also such costs as stationery expense and legal fees necessary to permit accomplishment of the covenants' goal. The fact that the covenants refer only to maintenance and care does not exclude from contemplation outlays for incidentals such as duplicating, postage, legal advice and representation, property taxes on the roads, grass cutting, and the purchase of maps. It should not be presumed that the drafters of the covenants, or those whose properties were subject to them, intended to develop a self-defeating plan because the means of administering it excluded collateral necessities. This appears to be the only reasonable interpretation of the declarations.

It cannot be said, however, that the declarations should be read so broadly as to evidence an intention for various members of Association's Board of Directors to be salaried and/or insured. There is nothing in the declarations which can reasonably be said to contemplate an owners' association staffed and organized to this extent.

### III—MODIFICATION OF THE COVENANTS BY ASSOCIATION

At some point in time, Association, composed of owners of some 170 plots in the subdivisions of Cain-Carlton, Whim, Carlton and Longpoint, was formed. Among its purposes was the administration of road maintenance in these tracts. While certain roads may be mutually used by all the subdivisions, nevertheless, they are not the responsibility of all. Each subdivision is a separate entity unto itself and has roads which are the responsibility only of the owners in that subdivision.

Notwithstanding this fact, and the fact that separate covenants running with the land spell out unequal obligations for owners in the different subdivisions, Associa-

tion's Board of Directors drafted a plan which consolidated the maintenance obligations of all the subdivisions. I have not been cited to any authority establishing the source of Association's power to do this.

Under the Association's adopted plan, each owner of an unimproved lot is to pay $30.00 annually, and each owner of an improved lot is to pay $100.00 annually. The condominium units are to pay $1,000.00 annually as a group, and the hotel is to pay in accordance with an undisclosed formula. This is the plan under which Association seeks to recover the annual assessments here in question, and for which the defendants have been billed.[6]

■■ The result of implementing this plan would be to change an owner's obligation to share in the road maintenance expenses of his or her particular subdivision without consent. The covenants running with the land do not provide for modification of the obligation by an owners' association or by a specific proportion of the owners. In the absence of such a provision, the same mutuality and formality of instrument is required to vary the restrictions in a subdivision as was required to create them. "The willingness of some owners to waive the restrictions is not binding on others who insist on its strict observance." 20 Am.Jur.2d, Covenants, Conditions & Restrictions, § 270.

■ I conclude, therefore, that the plan of Association is without legal effect and cannot modify the restrictive covenants. It is obvious that the declarations established assessments *on a prorated basis for expenses within their respective tracts.* This feature must be maintained.

IV—CONCLUSION

Based upon the foregoing analysis, the court concludes

---

[6] Claims for billings more than six years old must be rejected out of hand as barred by the Statute of Limitations, 5 V.I.C. 31(3)(A).

that the covenants here in question are valid and enforceable; that the covenants contemplate costs of road maintenance, including collateral costs such as postage, reproduction costs, legal fees incurred in the enforcement of the covenants or their provisions, applicable taxes and the like, but excluding salaries and insurance for Association officers; and that the Association may not modify the express provisions of the covenants except by an instrument of equal formality to the instrument of creation, executed by all affected property owners.

Because the evidence fails to disclose what sums expended for road maintenance were allocated to each of the several subdivisions, this court is unable to make the basic determination of annual maintenance costs which is clearly a condition precedent to the collection of assessments. Accordingly, although this court holds these covenants valid and enforceable and applicable to the respective properties here in question, it also holds that the collection of the assessments which constitute the subject matter of these suits may not be enforced. Each party shall bear his, her or its own costs and attorney's fees.

A judgment will enter in accordance with this Memorandum Opinion.

### JUDGMENT

In accordance with the Memorandum Opinion entered on even date herewith; it is

ORDERED, ADJUDGED AND DECREED that the restrictive covenants constituting the subject matter of these suits are valid and enforceable and applicable to the respective properties here in question; and it is further

ORDERED, ADJUDGED AND DECREED that defendants have judgment against the plaintiff, dismissing that portion of the complaints seeking to enforce collection of the assessments which constitute the subject matter of these suits; and it is further

ORDERED, ADJUDGED AND DECREED that each party shall bear his, her or its own costs and attorney's fees.