MICHAEL H. GRAHAM et al., Respondents, v CARL BEER-MUNDER et al., Appellants, et al., Defendants.

Second Department, April 25, 1983

APPEARANCES OF COUNSEL

*Arthur J. Reuter* for appellants.

*Quartararo & Quartararo* (*Anthony M. Quartararo* and *Tracy E. Hoff* of counsel), for respondents.

OPINION OF THE COURT

GIBBONS, J. P.

The issue on these appeals is whether the plaintiffs, who own land near that of defendants Beermunder, may enforce a covenant contained in the Beermunders' deed. Plaintiffs maintain that they have an equitable right of

enforcement, based on the existence of a common plan or scheme of development of which their properties and that of the Beermunders are a part. We find that the record proves the existence of such a common plan by clear and definite evidence.

## I

In August, 1970, defendants Beermunder (hereinafter defendants) purchased an approximately 17-acre parcel of land in the Town of LaGrange, Dutchess County, from Stephen Guernsey, III. The deed conveying the property contains the following:

"Said lot is conveyed subject to conditions and restrictions set forth in Schedule A annexed hereto and made a part thereof, which shall run with the land.

### "SCHEDULE A

"1. No building shall be erected on the premises until the design and location thereof shall have been approved in writing by either Stephen G. Guernsey, III, Stephen G. Guernsey, 4th, or the personal representative of the estate of Stephen G. Guernsey, III. This restriction as to approval of plans shall apply only to original construction upon the premises, and not to any replacements thereof.

"2. Said premises shall not be divided or subdivided without the written approval of Stephen G. Guernsey, III, Stephen G. Guernsey, 4th, or the personal representative of Stephen G. Guernsey, III's estate.

"3. No driveway, road or similar means of ingress or egress from a public roadway shall be constructed or reconstructed on said premises without first obtaining the necessary approval of the Superintendent of Highways of the Town of LaGrange, Dutchess County, New York, or any other necessary public body or official.

"4. No lot shall be used or maintained as a dumping ground for rubbish. Trash, garbage or other waste shall not be kept except in sanitary containers, which shall be properly screened from neighboring parcels of land.

"5. No structure of a temporary character, trailer, basement, shack, garage, barn or other outbuilding shall be

used on any lot at any time as a residence, either temporarily or permanently.

"6. No portion of the above described premises shall be used for any commercial purpose whatsoever.

"7. No billboards or commercial signs shall be erected or maintained upon the premises.

"8. No permanent clothes line shall be permitted upon the premises, except, however, one umbrella or circular type, removable clothes pole, or its equivalent may be erected.

"9. Arrangements for water supply and sewage disposal are to be installed in accordance with the standards set by the New York State Department of Health and/or the Dutchess County Health Department, and/or Town of La-Grange.

"10. Invalidation of any one of these covenants by judgment or court order shall in no wise effect any of the other provisions which shall remain in full force and effect.

"SUBJECT to the rights of way of any telephone or telegraph company or electric light or power company or any other public utility as now established, or of record, if any there be."

Prior to 1967 Stephen Guernsey, III (hereinafter Guernsey), owned a large tract of land in LaGrange, of which the parcel later sold to defendants was but a part. He determined to subdivide his property, creating a residential development which he called "Guernsey Hill, Section II". A map thereof was prepared, dated July 25, 1967, and filed with the Planning Board of the Town of LaGrange. Apparently the map was never filed with the Dutchess County Clerk.

Between 1967 and August, 1970, Guernsey sold all the parcels comprising Guernsey Hill, Section II, the last parcel being sold to defendants. Plaintiffs Wenk purchased their parcel in July, 1968; plaintiffs Graham obtained theirs in 1973 from Charles Podmaniczky, not a party to this action, who had purchased the property from Guernsey in January, 1970. Plaintiffs' deeds contain the same set of covenants and restrictions found in the deed of defendants.

Sometime prior to March 17, 1980 defendants filed an application with the Planning Board of the Town of La-Grange, requesting permission to subdivide their property into three lots. Plaintiffs brought this action, seeking, *inter alia,* a judgment declaring that plaintiffs may maintain an action enforcing covenant number 2 in defendants' deed, restricting the subdivision of defendants' property. Paragraph 12 of the complaint alleges that the covenants found in the deeds of the parties were inserted by Guernsey and "constituted part of a general scheme or plan of the subdividing of the said tract of land [Guernsey Hill, Section II]". Defendants' answer admits this allegation. They allege, however, by way of an affirmative defense, that the covenant in question is personal in nature, running "solely for the benefit of STEPHEN G. GUERNSEY, III, and his designated successors in interest", and is "not intended for the benefit of the purchasers of land in Guernsey Hill, Section II". In addition, defendants allege that on April 18, 1977, Guernsey himself gave his permission for the defendants' proposed subdivision, and that, in any case, the restriction in their deed against the subdivision is voidable as against public policy.

Both sides moved for summary judgment. By order, dated December 31, 1980, Special Term granted summary judgment to the plaintiffs. In its decision supporting its order, Special Term relied on *Korn v Campbell* (192 NY 490), stating in pertinent part that "when an owner of a tract of land subdivides it and sells parcels thereof to separate grantees, imposing a general plan or scheme of development by common restrictions, these restrictions may be enforced by one of the grantees against any other grantee". Special Term further held that Guernsey's purported release was ineffective since he no longer held title to any of the property.

Special Term denied defendants' motion for reargument. Subsequently, defendants asked the court to vacate the order granting plaintiffs summary judgment on the ground of newly discovered evidence. It was alleged that Guernsey Hill, Section II, was not designed pursuant to a common plan or scheme of development, as the courts of this State interpret that phrase, in that two of the parcels sold by

Guernsey do not have the identical restrictions listed in their respective deeds as those contained in the deeds of the parties to this action. In particular, one parcel was sold to Anthony Quartararo, plaintiffs' attorney in this action, with all the covenants contained in the other deeds excepting covenant number 2. Another parcel, depicted in the middle of the map but unnumbered, was sold to Guernsey's wife, Frances Guernsey, with no restrictions at all. Special Term denied the motion to vacate on the grounds that the motion was untimely and that the information concerning the parcels sold to Quartararo and Frances Guernsey had been "a matter of public record for years" and, therefore, should not be considered newly discovered evidence.

## II

There is no provision in defendants' deed stating that the covenant in question is for the benefit of other grantees, so plaintiffs do not have an action at law premised on a third-party beneficiary status (*Steinmann v Silverman,* 14 NY2d 243, 246; *Cummins v Colgate Props. Corp.,* 2 Misc 2d 301, 303-304, affd 2 AD2d 749; cf. *Port Chester Elec. Constr. Corp. v Atlas,* 40 NY2d 652). However, equity may provide plaintiffs a remedy provided they show: (1) that their parcels and the parcel owned by defendants are part of a general scheme or plan of development (*Korn v Campbell, supra*); and (2) that, at the time defendants purchased the property, they had notice, actual or constructive, of the common scheme or plan (*Steinmann v Silverman, supra*). Upon such proof "the covenant is enforceable by any grantee as against any other upon the theory that there is a mutuality of covenant and consideration which binds each, and gives to each the appropriate remedy. Such covenants are entered into by the grantees for their mutual protection and benefit, and the consideration therefor lies in the fact that the diminution in the value of a lot burdened with restrictions is partly or wholly offset by the enhancement in its value due to similar restrictions upon all the other lots in the same tract" (*Korn v Campbell, supra,* p 495).

The burden is on plaintiffs to prove, from the surrounding circumstances, the existence of a common scheme or plan of development by "clear and definite proof" (*Huggins v Castle Estates,* 36 NY2d 427, 432; *Booth v Knipe,* 225 NY

390, 395). "Among the relevant factors are the substance of the restrictions, the language employed, the manner and form of representations and the compatibility with surrounding property" (*Huggins v Castle Estates, supra,* p 432).

We do not take as dispositive defendants' admission in their answer that there is a common scheme of development. In their motion to vacate, defendants categorically denied the existence of such a scheme, citing as evidence the lack of uniformity of restrictions in the deeds of two of the grantees. While Special Term did not abuse its discretion by denying the motion to vacate, since all the deeds were a matter of public record for years (see *Levantino v Insurance Co. of North Amer.,* 102 Misc 2d 77, 80-81), we consider it appropriate, given the equitable nature of this action, to determine whether the evidence, as a whole, clearly and definitely shows that Guernsey Hill, Section II, was developed pursuant to a common scheme or plan.

The substance and nature of each of the restrictions and their presence in almost all the deeds to properties in the project demonstrate a design that Guernsey Hill, Section II, remain an area for residences of substantial character and size. That the grantor intended a certain uniformity of appearance is further demonstrated by the fact that, as defendants acknowledge, when Guernsey sold the property to defendants, he told them that all the parcels were subject to the same set of restrictions that were contained in their deed. He also gave them the map of Guernsey Hill, Section II.

The existence of the map itself and its filing with the town planning board is further cogent evidence of a uniform plan of development (see *Steinmann v Silverman, supra*). The failure to file the map with the county clerk would only be fatal to plaintiffs' case, under these circumstances, if plaintiffs were unable to show actual notice on defendants' part. Actual notice is not an issue since defendants admit that, at the closing, they were shown the map and were told that their neighbors were subject to the same restrictive covenants.

Defendants make much of the fact that the covenant at issue here, covenant number 2 in their deed, is different

from the other covenants, excepting covenant number 1, in that it refers to approvals from the grantor. However, the presence in a covenant of a reservation of some consensual power to the grantor is but one factor to consider in determining whether there is a common scheme of development (*Richmond v Pennscott Bldrs.*, 43 Misc 2d 602, 606-609, affd 23 AD2d 968; *Goldberg v Paul*, 14 Misc 2d 988, 995). If, despite such a reservation, it is found that there is a common scheme, then when the grantor ceases to have any interest in the property, each of the grantees has a right of enforcement (*Richmond v Pennscott Bldrs., supra*).

We consider it very significant that the covenants were intended to run with the land. The use of such language indicates the grantor's intention that the grantees and their assigns would be subject to the restrictions contained in their deeds, and that at least someone would have a right of enforcement. Defendants argue that the covenant at issue is personal to the grantor, as evidenced by its language requiring further subdivision to first be approved by Guernsey, his son, or the personal representative of his estate. If that contention is correct, however, the covenant cannot be said to run with the land (see *Orange & Rockland Utilities v Philwold Estates*, 52 NY2d 253, 262).

If there were a dominant estate retained by the grantor, it might reasonably be argued that the right of enforcement, at least for the first two covenants in defendants' deed, was retained by the grantor and his assigns, as owners of the dominant estate (*Orange & Rockland Utilities v Philwold Estates, supra*). However, because the grantor divested himself of all his property, he possesses no rights of enforcement at all (*Richmond v Pennscott Bldrs., supra,* p 606). Thus, for the phrase "run with the land" to have any meaning in the context of defendants' deed, the covenants which "run with the land" must do so as part of a general scheme or plan where the common grantees and their assigns possess a right of enforcement (cf. *Neponsit Prop. Owners' Assn. v Emigrant Ind. Sav. Bank,* 278 NY 248; *Evangelical Lutheran Church of Ascension, of Snyder v Sahlem,* 254 NY 161). Analogously, "there would be no reason for inserting the covenant[s] in [defendants'] deed if the covenant[s] were not intended to be part of a general

plan for the protection of all lot owners. As stated in Berry on Restrictions on Use of Real Property (§ 312, p. 362), 'The circumstance that the original proprietor of various parcels of land imposed a restriction in the deed to the last parcel sold by him is very cogent to prove that he did so for the benefit of previous vendees, as he had no personal interest in the covenant' " (*Cummins v Colgate Props. Corp.*, 2 Misc 2d 301, 304-305, *supra*).

We are of the view that the grantor's reservation of the right to consent was not inconsistent with an intention to establish a common scheme of development. This is apparent in light of the grantor's intention to have the covenants run with the land and his inclusion of the covenants in the deed by which he disposed of the last parcel in Guernsey Hill, Section II.

Another point emphasized by defendants on appeal is that the deeds to Frances Guernsey and Anthony Quartararo do not contain the uniform restrictions found in the deeds of the other grantees. The fact that all the parcels in a development do not contain the same restrictions does not necessarily mean that a common scheme was not intended; such is only one element to be considered in the totality of the circumstances (*Steinmann v Silverman*, 14 NY2d 243, 246, n, *supra; Princeton Constr. Corp. v Dasoph Realty Corp.*, 34 NYS2d 18, affd 263 App Div 994).

The reason Frances Guernsey's deed contains no restrictions is obvious: she is the grantor's wife. That Guernsey did not subject his wife to the covenants placed on the other grantees implies nothing as to the status of the latter. Not surprisingly, while Frances' parcel is necessarily depicted on the map because it lies in the center of the development, it is unnumbered. Guernsey clearly considered his wife's parcel separate from the other parcels in Guernsey Hill, Section II. One wonders if, in fact, this parcel is properly a part of the development, despite its physical location.

Why one restriction was omitted in the deed to Quartararo is not so clear. Perhaps it was a simple mistake. There is nothing in the record to indicate one way or the other. Suffice it to say, however, that, in these circumstances, where the deeds of eight grantees contain all the restrictions and the deed of one grantee has all but one restric-

tion, the omitted restriction is of insignificant moment. While such might effect Quartararo's equitable rights of enforcement, which we need not decide, it has no effect on the rights of the other grantees.

In sum, we find that the evidence clearly and definitely shows that Guernsey Hill, Section II, is a common scheme or plan of development. We are persuaded of this by the following set of circumstances: (1) when Guernsey subdivided his property, naming it "Guernsey Hill, Section II", he had a map prepared and filed with the town planning board; (2) the presence in almost all the deeds of the same nine restrictions, designed to insure a uniformity of appearance in an estate-like atmosphere; (3) the inclusion in the deed to the last grantees, defendants, of the covenants despite the fact that the grantor no longer retained an interest in any of the property; (4) the use of the phrase "running with the land", indicating that the covenant at issue was not personal to the grantor and, under the circumstances, implying that the other vendees were to have a right of enforcement; and (5) the fact that when defendants purchased the property, Guernsey gave them a copy of the map and informed them that all the parcels depicted were subject to the same restrictions. This latter aspect also serves to satisfy the notice to defendants which must be proven to allow plaintiffs' equitable relief. Defendants have not offered any evidence which would cast sufficient doubt on the issue so as to require a trial, and, therefore, summary judgment is warranted.

There is nothing in the record to indicate the presence of circumstances, such as a change in the character of the neighborhood, which would make it inequitable to enforce the covenant in question (see *Evangelical Lutheran Church of Ascension, of Snyder v Sahlem,* 254 NY 161, 168-169, *supra; Gordon v Incorporated Vil. of Lawrence,* 84 AD2d 558, 559). Plaintiffs, grantees in the common scheme with defendants, are apparently satisfied with the way things are and may insist upon adherence to the covenant. Until such time as no grantee objects or until such time as circumstances change so that equity will not enforce the letter of the restriction, defendants may not subdivide their property.

Accordingly, the order of December 31, 1980, insofar as it granted plaintiffs' cross motion for summary judgment and denied defendants' motion for summary judgment, and declared the rights of the parties, should be affirmed. The appeal from the order dated January 30, 1981 should be dismissed, since an order denying a motion for reargument is not appealable. The order dated June 3, 1982, which denied defendants' motion to vacate the order of December 31, 1980, should be affirmed.

WEINSTEIN, THOMPSON and RUBIN, JJ., concur.

Order of the Supreme Court, Dutchess County, dated December 31, 1980, affirmed insofar as appealed from and order of the same court dated June 3, 1982, affirmed.

Appeal from an order of the same court dated January 30, 1981, dismissed. No appeal lies from an order denying reargument.

Plaintiffs are awarded one bill of $50 costs and disbursements.