■ Joseph A. Pepe et al., Respondents, v Antlers of Raquette Lake, Inc., et al., Appellants. [927 NYS2d 732]—

Malone Jr., J.

Plaintiffs are individual owners and an association of owners

of real property located in the hamlet of Raquette Lake, Hamilton County. All of the parties' parcels were once part of a single large parcel that was owned by S&I Hotels, Inc. In 1956, S&I conveyed that parcel to defendant Antlers of Raquette Lake, Inc., excepting out a parcel commonly known as the Birch Cottage lot, now owned by defendant Raquette Lake Navigation Company, Inc. The deed from S&I to Antlers contained a covenant that limited the use of the Birch Cottage lot to residential use only and expressly prohibited it from being used for commercial purposes. The deed also contained a provision giving Antlers "the first option to purchase" the lot should S&I have an opportunity to sell it and a provision stating that the covenants were to run with the land. Antlers thereafter subdivided its parcel and conveyed approximately 60 individual lots, the majority of which were by deeds containing restrictive covenants limiting the use of the lots to residential use. In July 1958, James Evans Sr. obtained title to the Birch Cottage lot and, the following month, Antlers executed a quitclaim deed to the Birch Cottage lot in favor of Evans that specifically stated, "The purpose of [the] deed [was] to release said premises from [Antlers'] option to purchase said property from S&I."

Plaintiffs commenced this action seeking to enjoin defendants from commercially developing three parcels of property—the Birch Cottage lot and two contiguous parcels owned by Antlers—claiming that those lots are subject to restrictive covenants limiting the use of such parcels to residential purposes. Following joinder of issue, plaintiffs moved for summary judgment and defendants cross-moved for the same relief. Finding that the Birch Cottage lot was subject to the restrictive covenant placed on the parcel in the 1956 deed from S&I and that two parcels owned by Antlers are part of a common scheme of development that prohibits commercial use, Supreme Court granted plaintiffs' motion for summary judgment. Defendants appeal and we affirm.

As limited by their brief, defendants contend that Supreme Court erred by finding that the 1956 restrictive covenant prevents them from commercially developing the Birch Cottage lot because that covenant was extinguished by the 1958 quitclaim deed and was personal to Antlers. As subsequent owners of a dominant estate seeking to enforce a restrictive covenant against a servient estate, plaintiffs are required to demonstrate that the covenant is real, rather than personal (see *Neponsit Prop. Owners' Assn. v Emigrant Indus. Sav. Bank*, 278 NY 248, 255 [1938]; *Harrison v Westview Partners, LLC*, 79 AD3d 1198, 1200 [2010]). The determination of whether a re-

strictive covenant is personal or real is dependent upon three factors, only one of which is contested here—"whether the parties intended [the] burden to attach to the servient parcel and its benefit to run with the dominant estate" (*Orange & Rockland Util. v Philwold Estates*, 52 NY2d 253, 262 [1981]; *see Harrison v Westview Partners, LLC*, 79 AD3d at 1200).

Plaintiffs satisfied their burden on their summary judgment motion by submitting, among other things, the 1956 deed between S&I and Antlers, which provides that the Birch Cottage lot and "the cottage which is located thereon, and any building which may hereafter be erected thereon[,] shall be used only as a residence and shall not be used for any commercial purpose." The provision expressly stating that the covenant "shall run with the land and be binding upon and ensure the benefit of the respective parties hereto[,] their successors and assigns" is clear and convincing proof that the parties intended the covenant to be real rather than personal to Antlers only (*see Witter v Taggart*, 78 NY2d 234, 237-238 [1991]; *Orange & Rockland Util. v Philwold Estates*, 52 NY2d at 262-263). Plaintiffs also submitted the deeds in their chain of title, establishing that they are successors of the dominant estate.

In opposition to plaintiffs' motion, and in support of their cross motion, defendants submitted deeds in the chain of title to the Birch Cottage lot, including the 1958 quitclaim deed that they allege extinguished the 1956 restrictive covenant. However, the stated purpose of the quitclaim deed was "to release [the property] from an option to purchase said property from [S&I,] which option is contained in the deed" from S&I to Antlers—it did not also expressly release the property from the restrictive covenant in that deed. To the contrary, the quitclaim deed contained a provision expressly stating that the lot was "[s]ubject to all covenants, restrictions, conditions, easements and consents of record." Although defendants submitted affidavits detailing the purported motivations of S&I and Antlers in 1956 when the covenant was added, a court will only look outside the four corners of the deed to establish the intent of the parties when, unlike here, that instrument is found to be ambiguous (*see Gitlen v Gallup*, 241 AD2d 856, 858 [1997]; *Brody v St. Onge*, 167 AD2d 671, 673 [1990]). The fact that the restrictive covenant was omitted from certain deeds in the chain of title to the Birch Cottage lot does not demonstrate that the covenant had been extinguished. Because the original Birch Cottage lot deed was properly recorded, subsequent deeds in the chain of title are on notice of and are subject to the restrictions contained in the original deed (*see Witter v Taggart*, 78 NY2d at

238; *Terwilliger v Van Steenburg*, 33 AD3d 1111, 1114 [2006]). Finally, the agreement that defendants entered into with each other in 2007 to purportedly extinguish the restrictive covenant was not effective because "all of the benefitted property owners must join in [such agreement] in order to completely extinguish the obligation" (11-121 Warren's Weed, New York Real Property § 121.104 [2010]).

Considering that defendants' proof neither created a triable issue of fact nor established their entitlement to judgment as a matter of law, Supreme Court properly granted summary judgment to plaintiffs. To the extent that they are properly before us, we have considered defendants' remaining contentions and have found them to be unpersuasive.

Rose, J.P., Stein, McCarthy and Egan Jr., JJ., concur. Ordered that the order and judgment are affirmed, with costs.